UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN MCCLINTON EL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 06 C 5329 |
| vs. | ) |
| | ) 06 C 6839 |
| JOHN E. POTTER, Postmaster General, | ) |
| United States Postal Service, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of John Potter, Postmaster General, United States Postal Service ("Potter") for summary judgment. For the following reasons, the motion is denied.

## BACKGROUND

Plaintiff Carmen McClinton El ("McClinton El") seeks relief on account of disability discrimination and retaliation under the Rehabilitation Act ("Act"). 29 U.S.C. § 794. He initially filed suit on September 29, 2006, after the Equal Employment Opportunity Commission ("EEOC") issued its final decision arising out of a complaint filed against the United States Postal Service in June 2004 (No. 06 C 5329). McClinton El subsequently filed suit on December 11, 2006, after receiving notice of the EEOC's right-to-sue letter from a charge of discrimination he lodged against the same defendant

in 2001 (No. 06 C 6839). We consolidated the two cases due to relatedness and presently address both. The following is a recitation of undisputed or otherwise admitted portions of Potter's 56.1 statement of material facts and McClinton El's statement of additional facts.

McClinton El began working at the Postal Service's Auburn Park facility as a letter carrier on August 20, 1994. When he first began employment, he had no medical disorders or physical impairments that interfered with his performance. He worked at Auburn Park until August 16, 2004, but remained on the payroll as an employee until the Office of Personnel Management approved his application for disability retirement in December 2005.

During his career as a carrier for the Postal Service, McClinton El developed a mental disability that caused major depression, anxiety, and neck pain. It specifically affected the following body functions: (1) decreased concentration during migraine headaches; (2) limited movement due to the need to sit and rest; (3) reduced concentration that affected his employment; and (4) sleep complication. At various times from 2002 until he left his job in 2005, McClinton El received counseling, group therapy, and medications to treat depression and anxiety—including a one-month hospital program in November 2002. He attended more than fifty sessions with psychologist Dr. Darrell Snyder, was hospitalized on an outpatient basis at least four

times, and took medication prescribed by his doctors. McClinton El's treating physicians documented and informed his supervisors of his progress and occasionally restricted him from work. Despite medical intervention, McClinton El's condition did not improve; in November 2005, he was deemed permanently disabled.

In March 1998, McClinton El participated in a march at the Auburn Park facility to protest the installation of Paula McHenry[1] as manager of that facility. Inspired by perceived unfairness, McClinton El marched in opposition to her authority. Two weeks following the protest, McHenry suspended him for seven days, allegedly for participating in the protest. He subsequently filed a charge with the EEOC and the case settled in his favor.

On May 29, 2001, McClinton El reported to supervisor Annette Frazier that his vehicle was unsafe and requested a receipt. Frazier disputed the vehicle's condition and refused to give him a receipt; she stuck her tongue out at him, used a loud voice, and made gestures. One month later, McClinton El claims that he called McHenry to report an injury he sustained in the workplace. She questioned the validity of his injury and threatened to investigate him. On October 30, he contends that Frazier called him a

---

[1] McHenry began working as the interim manager of Auburn Park in 1996 or 1997, became a permanent manager on March 10, 1998, and remained with the facility until the fall of 2002.

"faggot." During a meeting on November 30, one of his supervisors commented about his inadequate hygiene.

In December 2001, McClinton El's manager and supervisors placed him on emergency suspension[2], and later issued (January 2002) a notice of removal because he allegedly made physical and verbal threats toward his supervisors. However, both the emergency suspension and notice of removal were rescinded in February 2002 after the Postal Service's dispute resolution team determined the supervisors issued the sanctions without just cause.

At various times between 2002 and 2004, McClinton El's supervisors reported that he was unable to properly maintain his personal hygiene. Furthermore, depression interfered with his appetite and Dr. Snyder indicated that his physical appearance consequently suffered. In addition, McClinton El had severe sleep complications; at times, he could only sleep three or four hours a night. In the aggregate, the effects of depression affected his overall concentration, persistence, and pace-related abilities.

In sum, during 2001 to 2004, Potter disciplined McClinton El on numerous occasions. He received three notices of removal, each of which could have terminated his employment. The notices were later overturned. In addition, he received three

---

[2]"Emergency placement" is an immediate suspension until further notice.

corrective action citations in one month for delivering mail too slowly—at least two of these suspensions were overturned.

McClinton El perceives that Potter's discriminatory action occurred on account of his mental disability and in retaliation for engaging in a protected activity. In support, he identifies Tyrone Green, a letter carrier who held a similar job description. Green did not suffer from a disability or file with the EEOC. He testifies that Green would often arrive back to the station later than he would, yet never received suspension for pace-related activity.

At the close of all discovery, Potter filed the following motion for summary judgment. McClinton El opposes the instant motion.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify the specific portions of the total record, which it believes establishes the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.*, 477 U.S. at 325,

106 S. Ct. at 2554. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but—"by affidavits or as otherwise provided for in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). With these principles in mind, we turn to Potter's motion.

## DISCUSSION

Potter identifies several reasons the court should grant his motion for summary judgment. Principally, he asserts that the action is time barred due to McClinton El's failure to file suit within ninety days of receiving the agency's final decision; he criticizes the timeliness of both the 2001 and 2004 cases. With respect to McClinton

El's underlying claim, Potter challenges whether he is disabled as that term is defined for purposes of the Act. He also asserts that McClinton El has not established any adverse employment action due to disability or retaliation. Finally, Potter disputes that McClinton El was treated less favorably than similarly situated employees outside his protected class.

**I. Timeliness**

McClinton El filed a charge against Potter with the EEOC for discrimination and/or retaliation in 2001. The EEOC rendered its decision and mailed it on November 4, 2005. McClinton El asserts that he did not receive the notice sent on November 4 until September 13, 2006, after requesting said notice from the EEOC. He filed a second charge against Potter for similar conduct arising in 2004. The EEOC rendered its decision dismissing the case and issued notice of right to sue on June 29, 2006. McClinton El received this notice shortly thereafter and filed the present actions in this court.

*A. Final Decision of the 2001 EEOC Case*

Potter challenges whether McClinton El's discrimination suit arising out of the 2001 EEOC findings was filed with the ninety-day time limit that follows receipt of a right-to-sue letter. *See* 42 U.S.C. § 2000e-16(c). "The time limit is not flexible, even for *pro se* litigants, a one-day delay is fatal." *Davis v. Browner*, 113 F. Supp. 2d 1223,

1225 (N.D. Ill. 2000). The ninety-day period generally begins to run on the plaintiff's actual receipt of the right-to-sue notice, rather than the date of the notice. *Houston v. Sidley & Austin*, 185 F.3d 837, 838 (7th Cir. 1999). Potter claims that the EEOC issued the right-to-sue letter on November 4, 2005, and therefore McClinton El's December 11, 2006 complaint is untimely and should be dismissed.

McClinton El asserts that he was not made aware of his rights under the 2001 case until the summer of 2006 when he received the EEOC's notice to sue for the 2004 case. He claims to have notified the EEOC that he never received written notice and that the court should accept September 13, 2006 as the date he actually received the right-to-sue letter. If we adopt McClinton El's position, then the complaint would be deemed timely.

In deciding this issue, we are asked whether the doctrine of equitable tolling is applicable. Potter charges that we should dismiss the complaint because he perceives McClinton El's explanation to be unsupported by any evidence. McClinton El testifies that his address is commonly mistaken for a similar address and that he had no legitimate expectation that the EEOC's findings would issue any sooner than the summer of 2006. Potter has not proffered any evidence that the EEOC's letter was delivered to McClinton El's address on a certain date, which would preclude him from

bringing this action. In the absence of specific evidence that McClinton El received the EEOC's letter or steadfastly ignored it, the motion is denied and the complaint will lie.

*B. Final Decision of the 2004 EEOC Case*

Potter claims that McClinton El filed the complaint relating to the 2004 EEOC case beyond ninety days. In the complaint, McClinton El pled that he received the right-to-sue letter on June 29, 2006. He subsequently filed the present suit on September 29, 2006—ninety-two days after allegedly receiving notice. The document reflecting the agency's decision states that the EEOC rendered its decision on June 29, which means it was probably mailed that same day. McClinton El attached the EEOC decision as an exhibit to the complaint. Where an exhibit conflicts with the allegations of a complaint, the exhibit controls. *Massey v. Merill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The Seventh Circuit has held that when notice is delayed by or through the plaintiff's fault, "the constructive receipt doctrine applies and the clock starts running once delivery is attempted at the last address provided." *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005). However, courts that have abandoned the actual notice rule did so by assessing whether the plaintiff was at fault. *See, e.g. Saunders v. American Warehouse Servs.*, Inc., No. 92-C7650, 2003 U.S. Dist. LEXIS 9090, at *2 (N.D. Ill. May 30, 2003) (evidence showed that plaintiff was at fault for failing to notify the EEOC of his change of address); *Jones v. Motorola, Inc.*, No. 00-

C6439, 2001 U.S. Dist. LEXIS 11070, *5-6 (N.D. Ill. July 27, 2001) (failing to retrieve a certified letter in the time frame set forth by the Post Office's notice before the letter would be returned to the sender). Here again, besides the date conflict between the decision date and the filing of the complaint, Potter has not presented any reason why it would be untimely filed. Unless proven otherwise, the receipt date is presumed to be five days from the mailing date. *Loyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989). Adhering to these principles, we deny Potter's motion because adding five days to the June 29 decision date means McClinton El had notice of his right to sue by July 5. The complaint was filed within ninety days thereafter. So Potter is not entitled to judgment as a matter of law on this claim on the grounds of untimeliness.

## II. McClinton El's Disability under the Rehabilitation Act

Potter asserts that McClinton El's condition does not qualify as a "disability" under the Act. He particularly states that McClinton El's injuries do not "substantially limit" his "major life activities" and/or occurred on an episodic and intermittent basis. To establish a *prima facie* discrimination claim under the Act, McClinton El needs to show (1) he is disabled within the Act's definition, or he was regarded as having such disability by his employer; (2) he was qualified to perform the essential functions of his job; and (3) he has suffered adverse employment action on account of his disability. *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008).

McClinton El first opposes Potter's motion on the basis that his mental condition qualifies as a disability under the Act. The Rehabilitation Act defines disability as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities." 29 U.S.C. § 705(20). "Substantially limited" means "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *EEOC v. Sears Roebuck & Co.*, 417 F.2d 789, 797 (7th Cir. 2005).

Medically diagnosed mental conditions are impairments under the Americans with Disabilities Act ("ADA"). *See Emerson v. Northern States Power Co.*, 256 F.3d 506, 511 (7th Cir. 2001); 42 U.S.C. § 12112.[3] McClinton El contends that he has met his burden by producing evidence depicting the severity of his depression and anxiety. He cites at least two discrete month-long hospital stays and claims substantial limitations with respect to the following major life activities: caring for himself, sleeping, and eating.

---

[3]The standards of the ADA are to be used when evaluating claims of employment discrimination under the Rehabilitation Act. *See* 29 U.S.C. 794(d).

With regard to caring for oneself, McClinton El asserts that he was unable to properly maintain his hygiene for prolonged periods of time. *See* 42 C.F.R. §84.3(j)(2)(ii) (major life activities include caring for oneself). He offers Dr. Snyder's medical reports to substantiate his claim, which describe numerous occasions that his outward appearance reflected an inability to maintain good hygiene. On the subject of eating, Dr. Snyder noted that McClinton El lost over thirty pounds during the course of treatment. *See Branham v. Snow*, 392 F.3d 986 (7th Cir. 2004) (eating is a major life activity).

McClinton El also maintains that his impairments substantially limited his ability to sleep. Dr. Snyder testified that sleep disruption affected McClinton El by making him appear drawn and fatigued; his concentration, persistence and pace-related abilities were also reduced. Furthermore, his medical records indicate that his sleeplessness was a chronic and persistent problem. *See Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006) (sleep is a major life activity).

Potter contends that McClinton El's injuries were episodic and intermittent. However, McClinton El points out that he attended more than fifty sessions with Dr. Snyder, completed four (or more) partial hospitalizations, and, for many years, routinely took medication prescribed by his physicians to treat his depression. In addition, he

spent several years under Dr. Snyder's care. Furthermore, McClinton El has qualified for disability retirement as a result of his mental impairments.

Potter has not impressed upon the court any evidence that would require us to enter judgment as a latter of law against McClinton El on the issue of disability. Therefore, we find that McClinton El has raised genuine issues of material fact on the question of whether he is disabled as defined within the Act.

### III. Adverse Employment Action

Potter next argues that he is entitled to summary judgment on the retaliation claim because minor and trivial employment actions are not sufficient to constitute adverse employment actions. *See Smart v. Ball State Univ.*, 89 F.3d 437, 440-41 (7th Cir. 1996). He perceives McClinton El's complaints of minor adjustments to his work schedule, name calling, and childish gestures as insufficient to form the basis of a discrimination suit. According to Potter, these types of actions do not cause significant change in employment status or benefits, which in turn cause no material harm. *See Rhodes v. Illinois Dep't of Trans.*, 359 F.3d 498, 504-05 (7th Cir. 2004). Assuming some of McClinton El's claims are considered adverse employment actions, Potter asserts McClinton El fails to establish that the actions were solely due to his disability or as retaliation.

Countering Potter's argument, McClinton El identifies specific instances of adverse employment action that he claims were caused by his disability or as retaliation against a protected activity. McClinton El claims that his managers and supervisors issued one futile suspension after another; each one, standing alone, could have prematurely terminated his career with the Postal Service. He points to one instance in which his managers issued three progressive disciplinary suspensions in one month. They also suspended him on "emergency placement" with no pay. Shortly thereafter, he received a notice of removal, a form of discipline that can potentially terminate a carrier's employment. We find that these suspensions coupled with negative financial effects are more than minor or trivial and thus could be deemed adverse employment actions. *See Russell v. Bd. Trs. Univ. Illinois Chicago*, 243 F.3d 336, 441 (7th Cir. 2001).

Next, to survive Potter's motion for summary judgment, McClinton El must establish that there is a causal connection between his disability and/or protected activity and the adverse employment actions taken against him. A plaintiff bringing a retaliation suit can defeat summary judgment in one of two ways: the direct or the indirect method. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the indirect method, a plaintiff must show that after filing the charge only he, and not any other similarly situated employee was subjected to adverse

employment action despite performing his duties satisfactorily. *Id.* The direct method requires a plaintiff to provide evidence that he engaged in a protected activity and suffered adverse employment action as a result of his complaints. *Id.* A plaintiff may use circumstantial evidence to proceed under the direct method. *Sylvester v. SOS Children's Vills. Illinois, Inc*. 453 F.3d 900, 902 (7th Cir. 2006).

McClinton El asserts that he can proceed under either method. Circumstantial evidence demonstrating intentional discrimination can arise in one of three ways. The first type is "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 491 (7th Cir. 2007). The second is evidence that a similarly situated employee outside the protected class received systematically better treatment. *Id.* Finally, evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Id.* McClinton El presents evidence under the first two types.

McClinton El's proposed circumstantial evidence begins with his many suspensions in spite of Potter's knowledge that his slower movement and reduced concentration were related to a mental disability. His supervisors issued notices of removal for "unauthorized" absences, despite medical reports indicative of his mental

condition. Furthermore, his supervisors negatively commented on his slow performance: one called him "crazy," referred him to a counseling service on numerous occasions, and recommended that he be evaluated for psychological fitness for duty.

McClinton El has also provided evidence of a similarly situated carrier, Tyrone Green, who worked at Auburn Park under the same supervisors, and shared similar responsibilities as a carrier. McClinton El testified that Green often arrived back to the station at the end of his route after McClinton El had already returned, yet Potter never suspended Green for slow performance. There is evidence that Green never filed an EEOC charge or suffered from a disability. For these reasons, we find that McClinton El has proffered a triable issue of fact whether Potter's actions were taken because of his disability or in retaliation for his EEOC activities. Consequently, Potter is not entitled to judgment as a matter of law in his favor.

## CONCLUSION

Based on the foregoing, Potter's motion for summary judgment is denied.

_____
Charles P. Kocoras
United States District Judge

Dated:   December 4, 2008